IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED GOVERNMENT SECURITY ) | |
| OFFICERS OF AMERICA, ) | |
| INTERNATIONAL UNION ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Civil Action No. 1:06cv219 |
| ) | |
| SPECIAL OPERATIONS GROUP, INC. ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff union brings this Section 301[1] action on behalf of a union member terminated by the defendant employer to enforce an arbitrator's decision awarding the member reinstatement and back pay after the parties conducted an arbitration hearing pursuant to a collective bargaining agreement (CBA). The threshold question presented and addressed here is whether the action is time-barred.

I.

Defendant, Special Operations Group, Inc. ("SOG"), provides security services at locations throughout the United States and has its principal place of business in Woodbridge, Virginia. Plaintiff United Government Security Officers of America International Union ("UGSOA") was the collective bargaining representative of SOG employees at various locations in West Virginia from September 2001 to January 2005. During the relevant times, Challis Smith was a UGSOA member and an SOG employee. SOG terminated Smith's employment in

---

[1] Section 301, Labor Management Relations Act, 29 U.S.C. § 185(a) (2006).

2004. Thereafter, Smith and UGSOA brought a grievance against SOG pursuant to the CBA dispute resolution procedures.[2] Pursuant to the CBA, the parties arbitrated the grievance and on December 8, 2004, the arbitrator ruled in favor of Smith and UGSOA ordering SOG to reinstate Smith and to compensate him for any loss of earnings he may have sustained as a result of his termination. When, after fourteen months, SOG failed to comply with the arbitrator's order, UGSOA brought this Section 301 action on February 27, 2006, seeking judicial enforcement of the arbitration award. SOG filed a timely motion to dismiss, arguing that UGSOA's claim is subject to the one-year limitations period in § 9 of the Federal Arbitration Act[3] and hence is time-barred. UGSOA counters that the five-year Virginia statute of limitations for breach of a written contract[4] applies and hence the action is timely.

II.

Analysis properly begins with the settled principle—on which both parties agree—that because Section 301 does not contain a statute of limitations, federal courts typically "borrow" an analogous state statute of limitations to measure the timeliness of a Section 301 action.[5] Next, it is necessary to determine which state should furnish the analogous limitations period. Here, the

---

[2] Section 5.4 of the CBA provides that grievances not settled by informal means may be submitted for arbitration with the arbitrator's decision to be final and binding.

[3] 9 U.S.C. § 9.

[4] Va. Code § 8.01-246 (2)

[5] *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983); *Int'l Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703-05 (1966) (applying state statute of limitations for breach of contract to Section 301 claim for failure to compensate discharged employees with accrued vacation pay as required by CBA); *United Steelworkers of America, Local 4839 v. New Idea Farm Equipment*, 917 F.2d 964, 967-68 (6th Cir. 1990) (applying state statute of limitations for confirmation of an arbitration award to Section 301 action to enforce an arbitration award).

parties diverge in their views. UGSOA contends that Virginia, as the forum state, should provide the analogous limitations period; whereas SOG argues that West Virginia is the appropriate source of state law because (i) Smith worked there, (ii) the CBA was executed there, and (iii) the arbitration occurred there.

SOG is correct; West Virginia is the appropriate source of state law. This is so for the following reasons. First, it is well settled that in a diversity action, federal courts must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). And, it is also the law in this circuit that federal courts should apply the *Klaxon* rule in federal question cases where, as here, federal law dictates some reference to, or borrowing from, state law.[6] While there is no Virginia choice of law rule for actions to enforce arbitration awards, there are established choice of law rules for cases concerning contracts. *See Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238, 241 (4th Cir. 1995) (applying Virginia contract choice of law principles in a diversity case). And, these rules are applicable here given that a Section 301 suit is properly characterized as a "suit for violation of a contract," namely the CBA. 29 U.S.C § 185(a) (2006). Virginia contract choice of law rules distinguish between actions concerning the performance of a contract, which are governed by the law of the place of performance, and actions concerning the validity or creation of a contract, which are governed by the law of the place of the making of the contract. *Black v. Powers*, 628 S.E.2d 546, 554 & n.8

---

[6]*See In re Merritt Dredging Co.,* 839 F.2d 203, 205-06 (4th Cir. 1988) (applying forum state choice of law rules to determine distribution of debtor's property where federal bankruptcy laws did not provide guidance); *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1464 (D.C. Cir. 1995) (applying forum state choice of law rules to determine appropriate statute of limitations where source of court's federal jurisdiction, the Edge Act, 12 U.S.C. § 611-631, did not supply a limitations period).

(Va. App. 2006) (citing *Arkla Mfg. Co. v. W. Va Timber Co.*, 146 Va. 641 (1926)).  Here, the dispute concerns not the CBA's creation but an alleged violation of it, namely SOG's failure to abide by an arbitrator's decision.  Thus, because this is a dispute concerning the performance of a contract and because the performance at issue occurred in West Virginia, the law of West Virginia governs and is the appropriate source for selection of an analogous statute of limitations.

The next step in the analysis is to determine which West Virginia cause of action is most analogous to this Section 301 suit and to borrow the West Virginia statute of limitations applicable to that cause of action.  Most analogous to the instant Section 301 action is West Virginia Code § 55-10-3, which allows for the result of a binding arbitration to be entered as a judgment.  Yet, as it happens, neither § 55-10-3 nor West Virginia decisional law provides a limitations period for actions to enforce an arbitration award.  Thus, the search for a West Virginia action analogous to this Section 301 action must extend beyond § 55-10-3 and focus on the West Virginia causes of action for breach of contract and for enforcement of a judgment, both of which include limitations periods and both of which are reasonably analogous to a Section 301 action to enforce an arbitration decision.

The analogy between this Section 301 action and a breach of contract action is supported by both the CBA's identity as a contract and by case law.  To begin with, SOG's alleged failure to abide by the arbitrator's decision is appropriately characterized as a breach of SOG's contractual obligations under the CBA.[7]  Understandably, therefore, courts have had no difficulty characterizing breaches of a CBA as breaches of contract and thus applying the breach of

---

[7]Although UGSOA does not cite a specific provision of the CBA which it believes SOG has breached, Section 5.4(b) of the CBA requires the parties to be bound by an arbitrator's decision and to comply with such a decision without "undue delay."

4

contract limitations period to various Section 301 actions, including actions to enforce arbitration awards.[8] It is worth noting however, that the Supreme Court has stated that a breach of contract will not necessarily supply the appropriate limitations period in every Section 301 action. *See Hoosier*, 383 U.S. at 705 n.7. Yet here, because the CBA expressly requires the parties to comply with an arbitrator's decision without undue delay, a breach of contract is unquestionably analogous to this Section 301 claim.

An action to enforce a judgment is also reasonably analogous to this Section 301 claim, given the final and binding nature of the arbitration award in issue. A final and binding arbitration award normally has the same effects on the parties as a judgement of a court. *See Restatement (Second) of Judgments § 84* (1982). In addition, a court's ability to review an arbitrator's decision is limited. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509-11 (2001) (finding appellate court erred in directing arbitrator to find for retired baseball player upon remand). These attributes are common to both judgments and arbitration awards, and hence it is appropriate to conclude that this Section 301 action is analogous to an action to enforce a judgment.

In the end, it is unnecessary to choose between the breach of contract limitations periods and the judgment enforcement limitations period because the instant action is timely no matter which West Virginia action and limitations period applies. The statute of limitations for breach

---

[8]*See, e.g., International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703-06 (1966) (applying state statute of limitations for breach of contract where union alleged company failed to compensate terminated workers with back pay, as required by the CBA); *Office & Professional Employees Int'l Union, Local 471 v. Brownsville General Hospital*, 186 F.3d 326, 336 (3d Cir. 1999) (applying Pennsylvania's breach of contract statute of limitations to Section 301 action to enforce arbitrator's award).

of a written contract in West Virginia and the statute of limitations for enforcing a judgment are both ten years. *See* W. Va. Code § 55-2-6; W. Va. Code § 38-3-18. The statute of limitations for breach of an *oral* contract[9] is five years. *See* W. Va. Code § 55-2-6. This action, filed only fourteen months after the arbitrator's decision, is not time-barred because it is well within any of these limitations periods.

Seeking to avoid this result, SOG argues that the appropriate limitations period is found in § 9 of the Federal Arbitration Act (FAA).[10] SOG correctly states that a court may borrow a federal statute of limitations where the federal statute is "clearly" more analogous to the Section 301 claim than available state statutes are.[11] SOG further argues that § 9 is more analogous to an action to enforce an arbitration award than any West Virginia statute and that the short one-year time period in § 9 is especially appropriate in light of the federal policy favoring the rapid

---

[9]In *Hoosier*, the Supreme Court applied the state statute of limitations for breach of an oral contract. There, the Supreme Court reasoned that although the CBA is a written contract, the suit depended, in part, on the oral employment contracts between the employer and each employee and, moreover, adapting the shorter statute of limitations for oral contracts was more consistent with the federal policy favoring the relatively rapid resolution of labor disputes. 383 U.S. at 706-07.

[10]9 U.S.C. § 9 (2006). Section 9 reads in relevant part: "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration... , then at any time within one year after the award is made any party to the arbitration may apply for an order confirming the award... ."

[11] *See DelCostello*, 462 U.S. at 171-72 (applying six-month statute of limitations in Section 10(b) of the National Labor Relations Act (NLRA) to a "hybrid" Section 301 suit where an employee sued both his union and his employer); *Foy v. Giant Food Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (stating that *DelCostello* requires the NLRA Section 10(b)'s six-month statute of limitations to be applied to Section 301 actions brought by an individual employee); *Sheet Metal Workers Int'l Ass'n, Local Union No. 33 v. Power City Plumbing & Heating, Inc.*, 934 F.2d 557, 559-560 (4th Cir. 1991) (applying limitations period from federal statute in action to vacate arbitration award because of absence of analogous state statute).

disposition of labor disputes.[12]

SOG's argument fails because the Fourth Circuit has held that § 9's one-year time period is not a statute of limitations. *Sverdrup Corp. v. WHC Constructors*, *Inc.*, 989 F.2d 148 (4th Cir. 1993). In *Sverdrup*, the Fourth Circuit, noting the use of the word "may" in § 9, construed that section's one-year time period to be a "permissive provision," not a statute of limitations. *Id.* at 151. In support of this result, the panel reasoned that construing § 9 as a statute of limitations would simply lead to the filing of new actions at law to resolve issues adjudicated in the arbitration in those instances where confirmation of the arbitration award was not sought within one year. *Id.* at 155. Such new actions, the panel noted, would undermine the federal policy favoring the private resolution of disputes. *Id.* Although this reading of § 9 renders the "within one year" language superfluous, the panel nonetheless considered that the federal policy was sufficiently strong to overcome the canon of construction that a court should read a statute to give effect to all of its parts. *Id.* at 151. Thus, the panel concluded, the one-year period is not a statute of limitations. *Id.* at 156.

SOG, refusing to strike its colors, argues that *Sverdrup* is of limited precedential value in light of the Supreme Court's subsequent decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193 (2000). Yet this argument, too, is not persuasive, as the *Cortez* analysis focuses almost exclusively on the FAA's venue provisions and their legislative history,

---

[12] Reliance on a federal policy favoring the rapid disposition of labor disputes to support short limitations periods for actions to enforce arbitration awards requires a cautionary comment. Short limitations periods, in this context, may encourage persons bound by arbitration awards to refrain from complying with the award to await passage of the limitations period. Put differently, a short limitations period may encourage non-compliance with an award for the duration of the limitations period in the hope that judicial enforcement of the award will become time-barred.

not on § 9's one-year time period. *Id.* at 199. The Supreme Court in *Cortez* did not analyze any FAA provisions dealing with statutes of limitations. SOG also cites *Photopaint Technologies, LLC v. Smartlens Corp.*,[13] where the Second Circuit, contrary to *Sverdrup*, construed § 9 as establishing a one-year statute of limitations. Although the Second Circuit's reasoning in *Photopaint* is sound, indeed compelling, *Sverdrup* remains controlling precedent in this circuit and district courts are not at liberty to reach a different result. In short, § 9's one-year period is not, in this circuit, a statue of limitations and hence § 9 cannot be used in preference to West Virginia law.

### III.

For all the reasons stated herein, SOG's motion to dismiss this Section 301 action to enforce an arbitration award as untimely must be denied. An appropriate order will issue.


_____/s/_____
Alexandria, VA                                                          T. S. Ellis, III
June 30, 2006                                                           United States District Judge

---

[13] 335 F.3d 152, 158 (2d Cir. 2003).